UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Tammy J. Yuhanick, | : | Case No. 5:09CV0907 |
| Plaintiff | : | Judge Christopher A. Boyko |
| v. | : | Magistrate Judge David S. Perelman |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED DECISION** |
| Defendant | : | |

This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of defendant's final determination denying plaintiff's claim for supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq., is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in her favor, alternatively, an order of remand, and defendant seeks final judgment upholding the decision below.

It appears that the plaintiff applied for benefits on November 22, 2006, alleging disability since August 19, 2004.[1]  In an undated Disability Report-Adult, which normally accompanies the benefit application, the questions "What are the illnesses, injuries or conditions that limit your ability to work?" and "How do your illnesses, injuries or conditions limit your ability to work?" were

---

[1] Although the transcript is certified as constituting "a full and accurate transcript of the entire record of proceedings relating to this case" it does not include a copy of the plaintiff's application for benefits.  Even more egregious is the fact that the record contains numerous documents relating to a claim filed by the plaintiff's husband.  See R. 67-73, 143-165. In addition, it appears from a Disability Report-Field Office Form SSA-3367 that the plaintiff had applied for and been denied benefits in August 2004, see R.75, but there is nothing further in the record with regard thereto, even though it could have res judicata consequences.

answered "Asthma, plate in right knee, learning disability" and "I have a hard time understanding instructions."

Upon denial of plaintiff's claim at the state agency level hearing de novo before an Administrative Law Judge (ALJ) was requested. That hearing was convened on November 20, 2008 by video conference, with the plaintiff and two witnesses (her husband, Paul Yuhanick, and her mother-in-law, Norma Davidson) in Mansfield, Ohio and the ALJ and a vocational expert (VE), Mr. Michael Dorval, in Springfield, Massachusetts. The plaintiff appeared without counsel.[2] After being advised by the ALJ of her entitlement to representation and the potential benefits of having such representation the plaintiff chose to go forward unrepresented.

At the outset of the hearing the plaintiff testified that she obtained her education at Presley Ridge School, where children that have a learning disability attend.

With regard to her employment history the ALJ noted "From what I can see it looks like most of the work you've done has been intermittent temporary jobs through temporary agencies" to which the plaintiff agreed,[3] while adding that she had also worked as a babysitter in her home for a pre-school age child for a minimal charge.[4]

When asked by the ALJ "why do you feel that you're uncapable [sic] of performing any kind of work at all?" the plaintiff responded "Well because like I said, I'm, I'm very slow in like reading. Writing, I'm not that good at writing. And I'm not really—I'm not good at math." She later stated

---

[2]In May 2007 Mr. Paul Woodrow of the firm of Barkan and Barkan entered an appearance as counsel for the plaintiff. However, on October 3, 2008 he withdrew as counsel, the notice of withdrawal stating "The claimant has been notified of our withdrawal and of her right to obtain new representation or pursue the claim on her own."

[3]When asked by the ALJ "did you complete the temporary assignments?" the plaintiff stated "Yes. I did. It was just like depending on what day, however long they wanted me to work for them. But mostly I pretty much did, yes."

[4]While the plaintiff stated she charged a dollar a day her husband testified that the charge was a dollar an hour, which appears to be a more realistic figure.

2

"I'm very scared of, of being around other people. Because I'm a very slow learner, and I'm afraid that if I do something they don't want me to do that they're going to—you know make fun of me or you know different things."

On December 31, 2008 the ALJ entered his decision, which stands as the defendant's final determination consequent to denial of review by the Appeals Council on February 18, 2009. The ALJ's "Findings of Fact and Conclusions of Law" were:

1. The claimant has not engaged in substantial gainful activity since August 19, 2004 (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: a history of asthma, history of right knee surgery with hardware installation, and borderline intelligence (20 CFR 416.921 *et seq.*).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, specifically when considering the criteria set forth in sections 1.00, 4.000 and 12.00, *et seq.* (20 CFR 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) including frequently lifting twenty-five pounds, occasionally lifting fifty pounds and sitting, standing and walking six hours during an eight-hour workday, but would need to avoid concentrated exposure to dust, fumes, strong odors, temperature extremes and humidity and would be limited to simple, rote tasks with no more than occasional interaction with co-workers and supervisors and none with the general public.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on January 3, 1970 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 CFR 416.963).

7. The claimant has at least a high school education and is able to

      communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 19, 2004 (20 CFR 416.920(g)).

On this appeal the following arguments are advanced:

A. Defective Transcript: The transcript of hearing includes material defects related to the ALJ's hypothetical questions and the vocational expert's testimony.

B. Listing 12.05: Substantial evidence does not support the ALJ's Finding that Yuhanick neither met nor equaled Listing 12.05(c).

C. Education: The ALJ made harmful errors regarding Yuhanick's education.

D. SSR 00-4p: The ALJ did not obtain the required "Reasonable Explanation" for the departure of the vocational expert's testimony from the DOT.

E. Sit/Stand Option: The ALJ misstated the vocational expert's testimony.

    The first issue raised by the plaintiff turns upon five "inaudibles" found in the portion of the transcript pertaining to the ALJ's examination of the VE. Two of those appear in hypothetical questions put to the VE and three in the witness' response to one fo those questions. It is argued that these five gaps undermine the ALJ's reliance on the VE's testimony in his determination that the plaintiff is not disabled.

    This Court does not find this to be so. In this Court's opinion when that evidence is viewed

in the full context of the record it is clear what the import of the questions and response was, and this Court finds no error in the ALJ's looking to the VE's testimony in coming to his decision.

The next claim of error is that the ALJ erred in failing to find that the plaintiff met or equaled Listing 12.05(c), which provides for recognition of disability based upon mental retardation:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C. or D are satisfied.
>
> \*   \*   \*
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional significant work-related limitation of function. . .

It is this portion of the ALJ's decision that is troubling to this Court.

On March 24, 2007 the plaintiff underwent evaluation, including intelligence testing, by a clinical psychologist, Dr. James F. Sunbury. His report states in pertinent part "On the WAIS-III, she received a verbal score of 66, a performance score of 75, and a Full Scale IQ of 67. This result places her intellectual functioning in the 'extremely low' range, and is higher than approximately 1% of non-institutionalized adults in her age group. The Verbal Comprehension Index was 67, in the 1% tile. The Perceptual Organization Index was 72, in the 3% ile," and his diagnoses included "mild mental retardation."

While one could reasonably view this as reflective of an intellect so limited as to be preclusive of employment and/or equaling Listing 12.05(c), this Court has problems with these determinations vis-a-vis the totality of Dr. Sunbury's report, starting with the diagnosis of "mild

5

mental retardation."  That term is not defined and in this Court's opinion, absent definition, it borders on the classic nonsequitur of being "a little pregnant."

In addition Dr. Sunbury assigned the plaintiff a GAF of 67, which is in the "mild symptoms" range, and stated that her abilities to relate to others, including fellow workers, to understand and follow instructions, to maintain attention to perform simple repetitive tasks, and to withstand the pressures associated with day to day work activity were all only "mildly limited," which in this Court's opinion could certainly be viewed as describing an individual capable of engaging in some level of simple work activity.

In his decision the ALJ did not discount Dr. Sunbury's IQ findings on the basis of this seeming conflict.  Rather, he did so on the basis, in part, that "The consultative examiner did not opine on the validity of the IQ scores."  That statement is flat out wrong.  Dr. Sunbury's report states with regard to the IQ testing "She seemed to make a good effort on the test, <u>and the results are thought to be valid</u>," (emphasis added).

In this Court's opinion there is no way of knowing to what extent, if at all, this articulated mis-perception of Dr. Sunbury's IQ findings factored into the ALJ's decision.  This being so, this Court does not believe that the defendant's final determination can stand under the substantial evidence standard of <u>Richardson v. Perales</u>, 402 U.S. 389 (1974), as this reviewing court cannot reach a reasoned conclusion as to the foundation for the ALJ's conclusion that the plaintiff does not meet or equal Listing 12.05(c).

As this error calls for reversal and remand this Court sees no point in addressing the plaintiff's other claims of error, as they all represent matters which another ALJ must consider upon remand.

It is, accordingly, recommended that the defendant's final determination be reversed and the matter remanded pursuant to the forth sentence of §405(g) for further proceedings.[5]

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:   July 21, 2010


### OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[5] While it is up to the ALJ upon remand to determine what those further proceedings should entail, this Court believes that it might be advisable to refer the plaintiff for another psychological evaluation, considering the inherent inconsistencies in Dr. Sunbury's report discussed herein.  It might also be useful for the ALJ to avail himself/herself of the benefit of testimony from a mental health professional.